UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EMMIS COMMUNICATIONS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   **1:05-cv-0791-SEB-VSS** |
| | ) |
| ADVENT CAPITAL MANAGEMENT, L.L.C., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTAIN DEFENDANTS' EMERGENCY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO VACATE THE EX PARTE ORDER GRANTING EXPEDITED DEPOSITION DISCOVERY**

Defendants Merrill Lynch Investment Managers, L.P., Gabelli Asset Management Company, Gabelli Asset Management (UK) Ltd., Shenkman Capital Management, Inc., Oaktree Capital Management, LLC, Advent Capital Management, LLC, Putnam Investment Management, LLC, SG Cowen & Co., LLC, OppenheimerFunds, Inc. and Davis/Dinsmore Management Co. (the "Certain Defendants") respectfully submit this Memorandum of Law in Support of Their Emergency Motion to Vacate the Ex Parte Order Granting Plaintiff Emmis Communications Corporation's ("Emmis") Motion for Expedited Deposition Discovery.[1]

**PRELIMINARY STATEMENT**

---
[1] By submitting this formal opposition, the Certain Defendants preserve and do not waive any objections to jurisdiction.  *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1271 (N.D. Ill. 1997) (no waiver of personal jurisdiction objection where, among other things, defendant participated in a motion to vacate a temporary restraining order filed six days after the complaints were filed, and seven days later, it filed a motion to dismiss for lack of personal jurisdiction), *aff'd in part*, *vacated in part on other grounds*, 136 F.3d 537 (7th Cir. 1998).

Certain Defendants seek by this motion to vacate an order obtained <u>ex parte</u> (the "<u>Ex Parte</u> Order"), which if left to stand would require all 26 out-of-state defendants to sit for depositions in Indiana one after the other for an hour each on the Tuesday, Wednesday and Thursday immediately following the Memorial Day holiday.[2]  The <u>Ex Parte</u> Order was entered three days after plaintiff filed its complaint -- before many defendants had been served (by mail) with the complaint -- and on the basis of a pretext apparently proffered by the plaintiff to the Court that "[e]xpedited discovery is urgently needed . . . ."  (Pls. Mem. at 1.)

But there is no emergency, no exigency and no need for the extraordinary scheduling burden imposed on defendants who have done nothing wrong -- indeed, have taken *no* action -- other than to have allegedly purchased on behalf of themselves or others the convertible preferred stock of Emmis sometime during the last six years (the "Preferred Shareholders").  Rather, what is at issue is plaintiff's contention that it had only recently discovered -- although plaintiff does not even allege when -- that its Articles of Incorporation written *almost six years ago* are inaccurate, the product, plaintiff claims, of a purported "mutual mistake" by the drafters of Emmis's Articles of Incorporation (none of whom is alleged to be a defendant in this action) and its unilateral attempt to correct this alleged "mistake" by filing a "correction" with the Indiana Secretary of State.

The provision that plaintiff wishes to rewrite (the ratio by which preferred stock can be converted to Class A common stock which is triggered by certain events) -- and rewrite in a way that is extremely detrimental to the Preferred Shareholders -- protects the economic interests of the Preferred Shareholders in the event of certain action by Emmis

---

[2]  For the Court's convenience, a true and correct copy of the <u>Ex Parte</u> Order is attached hereto as Exhibit A.  Additionally a true and correct copy of Plaintiff's Notice of Depositions is attached hereto as Exhibit B.

(such as issuing certain dividends, stock splits, issuance of options or warrants, and tender offers by Emmis for its own common stock) that would otherwise benefit holders of Emmis's common stock at the expense of the Preferred Shareholders.

Expedited discovery should not have been granted in this case. Plaintiff's claimed need for 26 depositions over a three day post-holiday period arises from a situation entirely of its own making and over which it exercises complete control. On May 16, 2005 Emmis commenced a highly conditional tender offer to purchase 20,250,000 shares (approximately 40%) of its Class A common stock (the "Self-Tender Offer"), the result of which would be to solidify control of the company in the hands of Jeffrey H. Smulyan, the Chief Executive Officer, President and Chairman of the Board. Emmis *chose* June 13, 2005 as the date that the Self-Tender Offer is scheduled to expire and chose that same date to call a special meeting of its shareholders to seek a shareholder vote to "ratify" its proposed "correction" to the Articles of Incorporation.

Plaintiff simply offers no reason why it needs certainty with respect to the terms of the Articles of Incorporation by June 13 (as opposed to any other date). Not only does Emmis have the unfettered ability and discretion to extend the self-imposed expiration date, but even with the expedited discovery it seeks Emmis will not be able to resolve this litigation before June 13 (absent settlement). Indeed, it is nearly impossible for the Self-Tender Offer -- by its own terms -- to close within that self-imposed time period. The Self-Tender Offer is subject to three typewritten pages of conditions including Emmis "prevail[ing] in [this] lawsuit" or "resolv[ing] the subject matter of the lawsuit." Nor is it reasonable to believe that Emmis will be able to get a final, definitive ruling in this litigation (including any appeals, if necessary) by June 13 (absent settlement) even if this matter were

to proceed on an expedited basis. Emmis has represented that it will not complete its self tender if there is "any risk whatsoever" that the conversion ratio for the Preferred Shareholders will be drastically affected by the operation of the Articles of Incorporation. (Pls. Mem. at 11.) Plaintiff's statement thus acknowledges that the merits of this matter will be addressed and, given defendants' serious challenges to plaintiff's arguments that raise complex corporate and securities law issues, the merits will be addressed upon summary judgment or trial. It is simply not reasonable to believe that these issues will be resolved by June 13, 2005. Thus, what is apparent is that plaintiff is using these litigation proceedings and the Ex Parte Order as a strategic tactic to limit the ability of the Preferred Shareholders to challenge effectively Emmis's plans to strip the Preferred Shareholders of their rights under the Articles of Incorporation even before the issue would ever get to the proposed shareholder vote.

Defendants believe that plaintiff is simply misreading the Articles of Incorporation and that the Articles of Incorporation need not be reformed at all but simply read in accord with their plain language. Moreover, plaintiff's mutual mistake theory can not operate against the defendants -- bona fide purchasers for value -- who purchased the securities after the purported mistake was made and without notice of any purported mistake.

And plaintiff's invocation of § 23-1-18-5(b) of the Indiana Code is likewise defective. Plaintiff cites no authority to support the proposition that this statute (and others like it) may be used to affect substantive changes to the terms of Articles of Incorporation to the detriment of Preferred Shareholders. *See Laster v. Waggoner*, Civ. A. Nos. 11063, 11067, 1989 WL 126670, at *13 n.13 (Del. Ch. Oct. 13, 1989) (discussing certificate of correction in terms of rectifying clerical error), *aff'd*, 581 A.2d 1127 (Del. 1990).

4

In light of the issues raised by Emmis's conduct, defendants are entitled to time to analyze the issues (including whether there is personal jurisdiction), propound their own discovery (assuming jurisdictional issues are resolved), including management's true motivations behind this conduct and, fundamentally, to dispute the underlying merits.

Accordingly, the Ex Parte Order granting expedited deposition discovery should be vacated.

## STATEMENT OF FACTS

### A. The Parties

Plaintiff Emmis Communication Corporation is a corporation incorporated under the laws of Indiana, whose stock trades on the NASDAQ ("EMMS").

Defendants are alleged to be current holders of over 75% of the convertible preferred shares of Emmis.

### B. The 1999 Public Offering Of Convertible Preferred Securities

Nearly six years ago, on October 26, 1999, Emmis sold 2,500,000 shares of 6.25% Series A Cumulative Convertible Preferred Stock in a firm commitment public offering.[3] (Harris Aff. Ex. 9.) Convertible preferred securities contain an option which allows them to be converted into common stock. The prospectus issued by Emmis in connection with the 1999 offering (and filed with the United States Securities and Exchange Commission) described preferred shareholders rights in connection with the conversion of their preferred shares into Class A common stock and provided a formula to determine the

---

[3] A firm commitment underwriting is an arrangement in which an underwriter assumes the risk of bringing a new securities issue to market, by buying the securities from the company and then reselling such securities to the public.

conversion ratio.[4] These are known as conversion rights. (Harris Aff. Ex. 9 at 59-62.) As part of those rights, the prospectus disclosed that in the event of certain specified transactions -- including a self-tender offer[5] such as what Emmis proposes here -- the conversion ratio is adjusted based on specific formulas described in the prospectus and set forth in the Articles of Incorporation. These are known as anti-dilution rights. (Prospectus at 59-62.) The prospectus also disclosed that under Indiana law, the holders of the outstanding shares of preferred stock will be entitled to vote as a separate voting group upon a proposed amendment to the Articles of Incorporation if the amendment would effect the conversion or anti-dilution rights of the preferred shares. (*Id.*)

    **C.    Six Years Later - The Tender Offer**

On May 10, 2005, Emmis publicly announced that it was going to offer to purchase 40% of its Class A common stock through the Self-Tender offer. (Harris Aff. Ex. 4 at 2.) The Chief Executive Officer also announced that he was not going to tender any shares so that his voting control in the Company (excluding unexercised options) would then exceed 50% after the Self-Tender Offer was completed. (*Id.*) Six days later, on May 16, Emmis commenced the highly conditional Self-Tender Offer to purchase 20,250,000 shares of its common stock. Although the offering purports to set a June 13 expiration, the deadline is entirely self-imposed. Plaintiff's obligation to purchase shares in the Self-Tender Offer is also subject to three pages of conditions -- including the following:

- We [Emmis] are, or will be, unable to either prevail in our lawsuit seeking, in part, a declaratory judgment authorizing the correction or reformation of the anti-dilution

---

[4] Exhibits are attached to the affidavit of Edward W. Harris III dated May 19, 2005 ("Harris Aff.") submitted by plaintiff.

[5] A self tender offer refers to a tender "offer for, or a request or invitation for tenders of, any class of equity security, made by the issuer of such class of equity security or by an affiliate of such issuer." 17 C.F.R. § 240. 13-e-4(2).

6

- provisions of our outstanding convertible preferred stock in our Second Amended and Restated Articles of Incorporation so that they are consistent with those in the Articles of Correction or resolve the subject matter of that lawsuit in a manner satisfactory to us;

- We are or will be unable prior to the Expiration Time to obtain debt financing on terms and conditions satisfactory to us in our reasonable judgment which will be sufficient to purchase the shares of Class A common stock pursuant to the Offer and to pay related fees and expenses;

- The FCC shall not have issued all required orders approving the increase in Jeffrey H. Smulyan's voting interest resulting from the Offer.

(Harris Aff. Ex. 5 at iii; 17-19.)

In the Offer to Purchase, Emmis disclosed for the first time that it purportedly believed there was a mutual mistake made in setting forth the conversion and anti-dilution rights of the preferred shareholders in the event of a self-tender offer. (*Id.* at 17.) That same day Emmis: (i) filed the Complaint in this action (which it then purported to serve by regular mail); (ii) filed with the Secretary of State a purported Articles of Correction to its Articles of Incorporation -- attempting to strip away valuable rights of the Preferred Shareholders; and (iii) filed a preliminary proxy statement seeking to ratify its actions and requesting shareholders to settle this very action as part of their vote.

In the Complaint, Emmis seeks a declaratory judgment that "the provision in the Preferred Amendment relating to adjustments to the conversion price of the Preferred in the event of a self-tender or exchange offer was the result of a mutual mistake" and also that the Articles of Correction that plaintiff filed with the Indiana Secretary of State on May 16, 2005 are "valid, binding and enforceable against all holders of the Preferred." (Compl. at ¶ 63.)

Emmis then waited three more days (even though it already had begun gathering affidavits three days earlier) -- more than a week after first announcing the Self-

7

Tender Offer -- to seek an <u>ex parte</u> order granting expedited discovery by representing to the court that the complicated issue regarding the alleged "mistake" in its Articles of Incorporation need to be definitively resolved by June 13.  The <u>Ex Parte</u> Order granting expedited discovery, which if allowed to stand -- which it should not -- calls for all 26 out-of-state defendants (who are located around the country) to produce a witness for deposition in Indianapolis in the days after the Memorial Day holiday.

## ARGUMENT

**I.   THE STANDARDS PLAINTIFF MUST MEET FOR EXPEDITED DISCOVERY**

There is no automatic right to expedited discovery simply because a plaintiff alleges that a resolution of its claim is urgent.  Numerous courts that have considered requests for expedited discovery have held that in order to obtain such discovery, a party must meet the high burden required in the case of a motion seeking a preliminary injunction, that: (1) the party faces irreparable injury; (2) the party has some probability of success on the merits; (3) there is a connection between the expedited discovery sought and the avoidance of irreparable injury; and (4) the injury that will result without expedited discovery is greater than the injury the defendant will suffer if expedition is granted.  *See Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); *Don King Prods. Inc. v. Hopkins*, No. 04 Civ. 9705, 2004 WL 2997800, at *2 (S.D.N.Y. Dec. 23, 2004); *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.,* 224 F.R.D. 581, 587 (D. Del. 2004); *see also Ind. Hi-Rail Corp. v. Decatur Junction Ry. Co.*, 37 F.3d 363, 366 (7th Cir. 1994) (setting forth preliminary injunction standards).

Courts also analyze requests for expedited discovery under a reasonableness test, where the relevant factors include: (1) the reason for seeking expedited discovery; (2)

8

whether a preliminary injunction motion has been made; (3) the breadth of the discovery request; (4) the burden on the opposing party of complying; and (5) how far in advance of the usual discovery process the request is made.  *See In re Fannie Mae Derivative Litig.,* No. Civ. 04-1783, 2005 WL 433271 (D.D.C. Feb. 23, 2005) (expedited "discovery requests . . . appear to be a thinly veiled attempt to circumvent the normal litigation process."); *Qwest Communications International, Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418 (D.Colo. 2003) (discovery request denied); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.,* No. Civ. 04-1783, 1998 WL 404820, at *2 (E.D.Pa. July 1998) (denying motion for expedited discovery where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing).

    Here, under either standard, plaintiff cannot justify the imposition of expedited discovery.

**II.**  **THE ABSENCE OF ANY NEED FOR EXPEDITED DISCOVERY**

  **A.**  **The Order Should Be Vacated Because There Is No Urgency**

    **1.  The June 13 Date Is Entirely Self-Imposed**

    Expedited discovery here is unwarranted and unreasonable because plaintiff's theory of  "urgency" is premised entirely on the notion that a mistake in the Articles of Incorporation -- a mistake that was purportedly made almost six years ago -- now must be corrected "promptly."  (Pls. Mem. at 2.)  But plaintiff offers absolutely no compelling reason why discovery ought to be expedited in the extraordinarily burdensome manner obtained by plaintiff.  The June 13 expiration date of the Self-Tender Offer is self-imposed.  Emmis chose, and has the absolute discretion to extend, that date.  Plaintiff offers no justification for why 26 individuals (who are alleged to have done nothing other than being employed by

9

alleged holders of preferred shares) must sit for deposition right after Memorial Day simply because Emmis chose to launch a Self-Tender Offer, Emmis chose June 13 as the expiration date and Emmis chose to seek to amend its Articles of Incorporation.

Indeed, the Complaint confirms that any purported time constraints here are dictated not by any compelling facts but rather by plaintiff's own choice.  There is no urgency here -- simply a desire to squeeze the Preferred Shareholders with the hope that the Preferred Shareholders will not have time to act.  Emmis is free to -- and reserves its right to -- extend the June 13 date.  Indeed, the Self-Tender Offer is subject to three pages of conditions, including a resolution of this litigation and regulatory approval by the Federal Communication Commission.  Therefore, plaintiff cannot show an irreparable injury that could occur absent the expedited discovery and any purported emergency based on that date is entirely of plaintiff Emmis's own making.  *See Warner Communications, Inc., v. Chris-Craft Indus., Inc.*, Civ. No. 10817, 1989 WL 85085, at *2 n.3 (Del. Ch. July 21, 1989) (motion for expedited determination not granted because, among other things, "the urgency was, to a large degree, of the defendants' own making"); *see also Union Pac. Corp. v. Santa Fe Pac. Corp.*, Civ. Nos. 13778, 13587, 1995 WL 54428, at *3-4 (Del. Ch. Jan. 30, 1995) (plaintiffs' motions for expedited proceedings denied where plaintiffs' own delay in making application was unreasonable); *Notaro v. Koch*, 95 F.R.D. 403, 406 (S.D.N.Y. 1982) (request for expedited discovery denied where there was a lack of urgency because there was sufficient time for relief under the normal process of discovery); *Hunter v. S.E.C.*, No. 94-5340, 1994 WL 580096, at *2 (E.D. Pa. Oct. 20, 1994) (denying request for expedited discovery because plaintiff did not demonstrate any emergency or unusual circumstances regarding his legal claims).

### 2. Expedited Discovery Would Serve No Real Purpose

Expedited discovery would fail to accomplish Emmis's purported goal.  Even with the burdensome expedited discovery schedule contemplated by the Ex Parte Order (26 depositions over three days), Emmis will be unable to procure a final, definitive ruling on its declaratory judgment and reformation claims (including appeals) by June 13, 2005.  Thus, plaintiff's expedited discovery serves no purpose and is patently unreasonable under the circumstances.  *See Merrill Lynch, Pierce, Fenner & Smith v. O'Conner*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (rejecting request for expedited discovery as unreasonable under the circumstances).

Emmis demands to depose every single defendant regardless of the circumstances surrounding their share purchase and irrespective of the known fact that not one of the defendants is alleged to have taken part in the drafting which led to the purported mistake.  Depositions of these 26 witnesses who are unlikely to have knowledge of the precipient facts surrounding the drafting of the Articles of Incorporation cannot possibly relate to the facts plaintiff will need to show to prove its mutual mistake theory.  Plaintiff's burdensome discovery therefore lacks any connection to the issue it contends is the crux of the case.  As such plaintiff has failed to satisfy its burden of establishing in the first instance the need for expedited discovery.  *See Merrill Lynch, Pierce, Fenner & Smith v. O'Conner*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) ("Plaintiff must make some prima facie showing of the need for the expedited discovery.")

Moreover, the Self-Tender Offer is subject to a host of contingencies -- including a final judgment or settlement of this litigation --  which ensures that Emmis's Self-Tender Offer will not be consummated until well after June 13, 2005.  For this reason as well, the Ex Parte Order ought to be vacated or modified because the parties can conduct

discovery in the normal (or even slightly accelerated) course well in advance of the expiration of the Self-Tender Offer.

### 3. The Articles Have Been In Place For Six Years

Plaintiff's claims of urgency are unfounded for another reason as well. The purported "mistake" has been in existence for approximately six years. The Amended Articles of Incorporation were entered into on October 26, 1999, and prior to the instant action, Plaintiff never raised a single issue concerning their content. And now, nearly six years after articles were executed, Emmis's proposed reformation purportedly needs immediate attention. Given the circumstances, expedited relief is patently inappropriate.

Emmis's claims of an emergency are also undermined by its conspicuous silence as to when it first discovered this so-called mistake or when it first contemplated commencing a self-tender. The voluminous offering documents and litigation papers suggest that Emmis has been aware of the purported "mistake" for some time but failed to alert the defendants or seek their input before proceeding on an <u>ex parte</u> basis -- despite having contacted certain of the defendants to discuss the purported "mistake."

### III.    PLAINTIFF'S CLAIMS ARE LEGALLY DEFICIENT

Although Emmis asserts that "its prayer for a declaration regarding the Articles of Incorporation can be resolved through prompt and straightforward proceedings in this Court" (Pls. Mem. at 14), Emmis is actually seeking to dramatically modify the rights of preferred shareholders based on an alleged "mutual mistake" that occurred nearly six years ago. This raises numerous complex corporate and securities laws issues, as well as common law issues such as whether Emmis can seek to reform a contract against bona fide purchasers like defendants.

In light of the numerous issues raised by Emmis's conduct, defendants are entitled to time to analyze the issues (including whether there is personal jurisdiction), propound its own discovery (assuming issues of personal jurisdiction are resolved) -- including discovery into the motives of management behind this supposed "mistake" -- and, moreover, to dispute the underlying merits. *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 830 (7th Cir. 2002) (under preliminary injunction standard, denied "without further discussion" if no likelihood of success).

Here, Emmis's Complaint suffers from substantial defects and is not likely to be successful. Emmis fails to allege any facts to establish the purported "mutual mistake" upon which its entire claim for reformation rests. *See Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 356 (Ind. Ct. App. 1995) (Indiana courts possess jurisdiction to reform written documents where there is a mutual mistake, "that is, where has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended. "Under Indiana law, "[i]n cases involving mutual mistake such as this one, the party seeking reformation must establish the true intentions of the parties to an instrument, that a mistake was made, that the mistake was mutual, and that the instrument therefore does not reflect the true intentions of the parties." *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 159 (Ind. 1994).

Defendants, who purchased Emmis stock not directly from Emmis, cannot be said to have been on notice of any "purported mistake." Hence, defendants are bona fide purchasers without notice and would not be bound by any reformation. 25 Ind. Law Encyclopedia Reformation of Instruments §9 (Feb. 2005) ("A mistake in a written instrument will not, however, be corrected against a bona fide purchaser for value without notice"). *See*

*Pulley v. Luttrell*, 13 Ill. 2d 355, 358 (Ill. 1958) ("it is equally well understood that equity will not reform a deed against subsequent bona fide purchasers for value, without notice of the mistake or of facts which should put them on inquiry").

Indeed, there is no mutual mistake. Plaintiff's are simply misreading the Articles of Incorporation to yield anomalous results. A proper and plain reading of the Articles of Incorporation is to protect the preferred shareholders from the economic consequences of certain actions by Emmis and yield a rational economic result. As the Seventh Circuit has held, "equity should not intervene and courts should not grant reformation where the complaining party failed to read the instrument, or, if he read it, failed to give heed to its plain terms." *Gierhart v. Consol. Rail Corporation-Conrail*, 656 N.E.2d 285, 287 (Ind. Ct. App. 1995) (citing *Holly Stores v. Judie,* 179 F.2d 730 (7th Cir. 1950)).

## IV.  THE BALANCE OF EQUITIES WEIGHS AGAINST EXPEDITED DISCOVERY

Given that expedited discovery would accomplish very little other than immensely burdening the Court and the defendants, the balance of equities clearly weigh in favor of allowing discovery to proceed in its normal course. *See MacDonald v. Chicago Park Dist.*, 132 F.3d 355, 363 (7th Cir. 1997) (preliminary injunction vacated where, among other things, defendant had advantage on the balance of harms).

## CONCLUSION

For the foregoing reasons, Certain Defendants respectfully request that the Court vacate the Order granting plaintiff's motion for expedited discovery.

Dated: May 26, 2005

Respectfully submitted,

*s/Anne N. DePrez*
Anne N. DePrez

Of Counsel:

Jay B. Kasner
Susan L. Saltzstein
Scott D. Musoff
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
212-735-3000

Karoline E. Jackson
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, In 46204
Telephone: (317) 231-7264

Attorneys for Certain Defendants

15

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing has been served this 26th day of May, 2005, by hand delivery and properly addressed to the following:

| | |
|---|---|
| Edward W. Harris III | Steven J. Strawbridge |
| James A. Strain | B. Keith Shake |
| Mary T. Doherty | Thomas E. Satrom |
| Sommer & Barnard, P.C. | Locke Reynolds LLP |
| One Indiana Square, Suite 3500 | 201 North Illinois Street, Suite 1000 |
| Indianapolis, IN 46204 | Post Office Box 44961 |
| | Indianapolis, Indiana  46244-0961 |

and by United States Mail, postage prepaid and properly addressed to the following:

| | |
|---|---|
| Penn Capital Management, Inc. | SMC Capital, Inc. |
| Attn:  Highest Officer Found | Attn:  Highest Officer Found |
| 52 Haddonfield-Berlin Road | 4350 Brownsboro Road, #310 |
| Cherry Hill, NJ 08034 | Louisville, KY 40207 |
| | |
| Blackrock Financial Management, Inc. | MFS Global Investment Management Inc. |
| Attn:  Highest Officer Found | Attn:  Highest Officer Found |
| 40 East 52nd Street | 200 Clarendon Street, T-58 |
| New York, NY 10022 | Boston, MA 02117 |
| | |
| Pekin Singer & Strass Asset Management, Inc. | Wells Fargo Bank, N.A. |
| Attn:  Highest Officer Found | Attn:  Highest Officer Found |
| 311 South Wacker Drive, #4990 | 420 Montgomery Street |
| Chicago, IL 60606-6622 | San Francisco, CA 94104-1205 |
| | |
| Fidelity Management & Research Company | Morgan Stanley Investment Management, Inc. |
| Attn: Highest Officer Found | Attn:  Highest Officer Found |
| 82 Devonshire Street | 1221 6th Avenue |
| Boston, MA 02109 | New York, NY 10020 |
| | |
| ING Investments, LLC | Tealwood Asset Management |
| Attn:  Highest Officer Found | Attn:  Highest Officer Found |
| 7337 E. Doubletree Ranch Road | 100 South 5th Street, Suite 410 |
| Scottsdale, AZ 85258 | Minneapolis, MN 55402-1229 |
| | |
| ING Investment Management Co. | Nuveen Asset Management |
| Attn:  Highest Officer Found | Attn:  Highest Officer Found |
| 230 Park Avenue | 333 W. Wacker Drive, #3200 |
| New York, NY 10169 | Chicago, IL 60606-2290 |

Lord, Abbett & Co., LLC
Attn:  Highest Officer Found
90 Hudson Street
Jersey City, NJ 07302

        /s Anne N. DePrez_____

INDS02 AZD 732003v1